**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Thomas M. Rogers,** | ) | **CASE NO. 1: 10 CV 1402** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **PAR Electrical Contractors, Inc.,** *et al.,* | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| **Defendants.** | ) | |

## I.  Introduction

Plaintiff, Thomas M. Rogers, filed a complaint in this case alleging a single cause of action:  that plaintiff's termination from his employment constitutes age discrimination in violation of Ohio Revised Code §§ 4112.02 and 4112.99.[1]  Defendants PAR Electrical Contractors, Inc. (PAR) and Qanta Services, Inc. (Qanta) answered plaintiff's complaint and filed counterclaims against plaintiff and third-party claims against plaintiff's present employer, Northline Utilities, LLC.  Presently pending before the Court is the Amended

---

[1]
    The complaint was filed in state court and removed to this Court on the basis of diversity.

1

Motion for Summary Judgment of PAR and Qanta on plaintiff's age discrimination claim. (Doc. 32.)  For the reasons stated below, defendants' motion for summary judgment is granted.

## II.  Facts

The following background facts, derived from the evidence of record, are not in dispute.[2]  PAR is a Missouri corporation with its principal place of business in Missouri. PAR is a wholly-owned subsidiary of Qanta, a Delaware corporation with its principal place of business in Texas.  (Shiflett Aff., ¶¶ 4, 5.)  Plaintiff was hired to work for PAR as a Superintendent in January, 2001.  (Pltf. Dep. 42.)  Plaintiff worked out of PAR's Cleveland, Ohio office for the company's "Division 24," which handled work in the eastern United States.  (Pltf. Dep., 42-44.)  PAR's primary business is high voltage electrical construction and transmission projects.  (Pltf. Dep. 42, Shiflett Aff., ¶ 18.)

In 2005, Plaintiff was promoted by Tom Shiflett to be Division Manager of Division 24.  (Pltf. Dep., 42, 53).  As Division Manager, plaintiff was in charge of managing a "contractor of choice" contract with Northeast Utilities, a PAR customer based in Hartford, Connecticut.  (Pltf. Dep. 43, 46.)  Work relating to this contract was mainly performed in Massachusetts and Connecticut.  (Querry Dep. 32.)  In addition, plaintiff was responsible for a contract with Cleveland Public Power (CPP) for utility pole replacement.  (Pltf. Dep. 48.) Plaintiff bid on the CCP contract biannually for PAR.  Plaintiff testified that he estimated and successfully obtained CCP contracts for PAR from 2001 through 2009-2010.  Plaintiff

---

[2]

Any disputes between the parties as to pertinent facts will be addressed in the discussion section below.

2

testified that he obtained a $15 million CCP contract in 2005; a $14 million contract in 2004;

a $9 million contract in 2007; a $10 million contract in 2008; and a $5 million contract in

2009-10.  (Pltf. Dep. 49.)

During his employment at PAR, plaintiff reported to Dale Querry and, later, beginning

in 2008, to Steve Adams when Adams became a vice president.  (Rogers Aff.¶ 6; Pltf. Dep.

56; Querry Dep. 8.)  Plaintiff's supervisors were not located in Cleveland.  Rather, only three

employees worked in the Cleveland office at the time of plaintiff's termination, plaintiff, his

wife, and a secretary.

Plaintiff was terminated from his employment with PAR around January 21, 2010 by

PAR's president Tom Shiflett.  (Shiflett Aff., ¶ 10.)  At the time of his termination, plaintiff

was 64 years old.  The reason plaintiff was given for his discharge was a reduction in force

and PAR's decision to close its Cleveland office due to insufficient business.  Shiflett made

the decision to close the Cleveland office as president of PAR; however, Querry had

discussed the situation with Shiflett prior to Shiflett's decision and recommended that Shiflett

"look" at the viability of the Cleveland office.  (Querry Dep. 31-32.)

### III.  Standard of Review

Federal Rule of Civil Procedure 56 governs summary judgment and provides that

"[t]he court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled judgment as a matter of law."[3]  The

---

[3]

      Federal Rule of Civil Procedure 56 was amended effective December 1, 2010.  The
Advisory Committee Notes to the 2010 amendments state that the standard for granting
summary judgment "remains unchanged," and "[t]he amendments will not affect continuing
development of the decisional law construing and applying [that standard]."  Fed. R. Civ. P.
56 advisory committee note.  This summary judgment motion was filed after the revised

procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion."  This can be done by citation to "materials in the record," including depositions, documents, affidavits, stipulations, and electronically stored information.  Fed. R. Civ. P. 56(c)(1)(A).  Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "The 'mere possibility' of a factual dispute is not enough."  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1986).  In order to defeat a motion for summary judgment, the non-moving party must present probative evidence that supports its position.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  In determining a motion for summary judgment, the non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.  *Id.* at 255.

## IV.  Discussion

Ohio Rev. Code § 4112.02(A) states that "[i]t shall be an unlawful discriminatory practice . . . [f]or any employer, because of the . . . age . . . of any person, to discharge without just cause . . . or otherwise to discriminate against that person with respect to . . . tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to

---

version became effective and is therefore governed by that version.

employment."[4]  Under Ohio law, a *prima facie* case of age discrimination may be proven

either directly or indirectly.  First, a plaintiff may use direct evidence to show that an

employer more likely than not was motivated by discriminatory intent in discharging an

employee.  *Peters v. Rock-Tenn Co.*, 180 Ohio App.3d 10, 13-14, 903 N.E.2d 1256, 1259

(Ohio App. 2008).  Without direct proof of discrimination, a plaintiff may establish a *prima*

*facie* case using the indirect method established in federal discrimination cases.  Under the

indirect method, the plaintiff must show that he was:  (1) a member of a statutorily-protected

class; (2) discharged; (3) qualified for the position; and (4) replaced by, or his discharge

permitted, the retention of a substantially younger person.  *Peters*, 180 Ohio App.3d at 14.  If

an employee is terminated as a part of a work force reduction, the fourth element of the *prima*

*facie* is modified and the plaintiff is also required to provide "additional direct, circumstantial,

or statistical evidence tending to indicate that the employer singled out the plaintiff for

discharge for impermissible reasons."  *Geiger v. Tower Automotive*, 579 F.3d 614, 623 (6th

Cir. 2009).

     If a plaintiff establishes a *prima facie* case of age discrimination under either method

of proof, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason

for the discharge.  If the employer establishes a nondiscriminatory reason, the employee then

bears the burden of showing that the employer's proffered reason is a pretext for

impermissible discrimination.  *Peters*, 180 Ohio App.3d at 14.  Pretext requires a plaintiff to

show that the defendant's legitimate, nondiscriminatory reason:  (1) had no basis in fact; (2)

---

[4]

     Ohio Rev. Code § 4112.99 allows a "civil action for damages, injunctive relief, or
other appropriate relief" for a violation of § 4112.02.

did not actually motivate the discharge; or (3) was insufficient to warrant the discharge.

*Ziegler v. IBP Hog Markets, Inc*., 197 F. Supp.2d 950, 952 (N.D. Ohio 2002).

Defendants contend that plaintiff cannot establish a *prima facie* case under either the direct or indirect method and, even if plaintiff could establish a *prima facie* case, PAR had a legitimate, nondiscriminatory reason to terminate plaintiff – a reduction in force involving a decision to close its Cleveland office – and plaintiff cannot establish that this legitimate, nondiscriminatory reason is a pretext for age discrimination.

Plaintiff contends there is direct evidence of age discrimination, specifically, age-related comments made by his supervisors, Querry and Adams.  As to Querry, plaintiff relies primarily  on a reply email Querry sent in response to plaintiff's email to Querry and Adams on July 30, 2009.  Plaintiff's email forwarded a letter plaintiff received from an apprenticeship training program, thanking plaintiff for donating tools and materials.  Plaintiff forwarded this letter to his supervisors and stated:  "Please read and post, I don't have to tell you guys this is an employee driven business."  In response to plaintiff's email, Querry mistakenly sent a "reply to all" (and, therefore, plaintiff received it), in which Querry stated:  "Wonder how much the old fucker spent on this????"  (Def. Ex. 6.)

Plaintiff testified that Querry and Adams also made other age-related comments to him.  He testified that Adams consistently "badgered [plaintiff] about his age at every opportunity," calling plaintiff "old fart" and "old man."  (Pltf. Dep. 72-73, 75.)  He testified that, toward the end of his employment, Querry asked him a few times how long it would be before he retired.  (Pltf. Dep. 78.)

Defendants dispute that age-related comments, other than Querry's email, were made

6

to plaintiff.  They further dispute that Querry's email is sufficient to constitute direct evidence of age discrimination because the email was isolated office banter,[5] not tied in time or fact to plaintiff's termination, and the alleged age-related comments were not made by the ultimate decision-maker, Shiflett.

The Court agrees with defendants that plaintiff's evidence is insufficient to establish a *prima facie* case.  First, plaintiff's own deposition testimony as to ageist comments is insufficient direct evidence in that plaintiff only generally testified that ageist comments were made but failed to provide specifics.  Further, the evidence shows that the comments in Querry's email were isolated, lighthearted office banter about which plaintiff never complained.  In fact, the evidence shows that plaintiff participated in the age-related banter. This shows that plaintiff himself did not consider Querry's comments to be serious.  *See Phelps v. Yale Security, Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993) ("isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination.") (internal quotations and citations omitted).

Even assuming the alleged age-related comments are sufficient to establish a *prima facie* case, defendants have come forward with a legitimate, nondiscriminatory reason for

---

[5]

On this point, defendants submit evidence that, after Querry's reply was sent, the following emails were exchanged between plaintiff and Querry:

Plaintiff:  "Who you calling an old fucker you middle aged prick, just kiddin[g] had some old hot sticks that tested bad and gave them material that was used."

Querry:   "I was only kidding man.  You know I support that stuff."

Plaintiff:  "I know I love you like a son!"

(Def. Ex. 6.)

7

terminating plaintiff (PAR's decision to close its Cleveland office and terminate all employees there), and plaintiff has failed to come forward with evidence sufficient to create a material issue of pretext.

Specifically, PAR's President Shiflett states that he made the decision to close the Cleveland office "as the result of a substantial decline in business and the outlook for future business in Cleveland." (Shiflett Aff., ¶ 18.)  He states that beginning in 2007, PAR began to experience a decline in its business but resisted closing any offices until 2010.  However, Shiflett states that in 2010, PAR was forced to close its Wisconsin and Cleveland offices. (*Id.*, ¶ 21.)  In 2010, Shiflett made the decision to close the Cleveland office, which serviced only two contracts: the CCP contract for utility pole replacement and the contractor-of-choice contract with Northeast Utilities, which was mainly performed in Massachusetts and Connecticut and only serviced by PAR's Cleveland office because that office had the excess capacity to handle it.  (Shiflett Aff., ¶¶ 19, 20.)  In connection with this reduction in force, the other employees in Cleveland were terminated, and PAR also terminated employees in its Missouri and Wisconsin offices.  (Def. Ex. 8-A; White Aff.)

Shiflett states that no one replaced plaintiff but, rather, "PAR distributed [plaintiff's] remaining tasks amongst existing employees at PAR."  Shiflett states that Adams assumed plaintiff's duties with respect to bidding on certain contracts, including the CCP contract, and that Tommy Burns assumed plaintiff's duties with respect to the administration of the contractor-of-choice agreement with Northeast Utilities.  (Shiflett Aff., ¶¶15, 16.)  He states that there is currently "no Division Manager in Cleveland, nor any PAR Cleveland or Ohio office."  (Shiflett Aff., ¶ 14.)

8

As further support for their assertion of a business decline in Cleveland, defendants submit a spreadsheet, entitled "[Ohio Division] 24 Analysis of Divisional Revenues & Gross Margins for the Years 2005 through 2010," prepared by PAR's controller.  (Meyer Aff., Def. Ex. 9.)  This analysis reflects that the Ohio portion of Division 24's revenue was 97% in 2005 but only 7% in 2010; the Ohio portion of Division 24's gross margin was 96% in 2005 and 6% in 2010.  Thus, defendants contend, in five years the Ohio portion of Division 24's gross revenue fell by approximately 90%, and the Ohio portion of Division 24's gross margin fell by approximately 89%.

Defendants also point to evidence that plaintiff himself recognized a downturn in business in Cleveland.  Plaintiff testified during his deposition that:  (1) the number of employees reporting to him as Division Manager of Division 24 declined from approximately 300 employees in 2005-2006, to approximately 50 employees in 2009-2010; (2) the size of PAR's biannual contract with CCP decreased over time from $15 million in 2005 to $5 million in 2010; and (3) PAR's Cleveland office was unable to competitively bid for business against non-union companies.  (Pltf. Dep., 47-49.)  In addition, the plaintiff acknowledged the lack of business in Cleveland in email exchanges with his supervisors beginning in 2009.  On March 27, 2009, plaintiff and Querry exchanged the following email messages:

> Plaintiff:  "I['ve] been looking at a new car are you gonna keep me around long enough to pay for it?"
>
> Querry:  "I don't have any plans right now.  But as we have discussed if we can't pick up the business in Ohio & surrounding areas it doesn't make much sense to have an office in Cleveland.  That's one of the reasons Steve is renting a place instead of buying a house.  Hopefully we can start picking up work."
>
> Plaintiff:  "Dale I do appreciate your candor don't get me wrong, right now there is no work in Ohio.  If I'm reading this right my only alternative is to

9

start looking for another job."

Querry:  "All is not that gloomy.  That is why I put Steve over there was to drive new business in Ohio, Indiana & Pennsylvania.  He's good at it so let's give him a little time to see what he can do."

Plaintiff:  "I got all the faith in the world in Steve, please tell Tom I'm looking to buy a new car."

(Def. Ex. 13.)

On March 31, 2009, plaintiff sent Querry and Adams an email, addressing an issue that occurred in the office, stating:  "I want you guys to know that if this division is failing it's not because we don't pay attention to detail with back-up and more back-up."  (Def. Ex. 11.)  On November 4, 2009, plaintiff sent an email to Adams stating:  "work is so slow in Ohio I'm thinking of takin[g] in laundry to increase the bottom line."  (Def. Ex. 10.)

Defendants' evidence is sufficient for a trier of fact to conclude that plaintiff was terminated for a legitimate, nondiscriminatory reason – a downturn in business in PAR's Division 24 Cleveland office, resulting in a decision by PAR to reduce its work force in Cleveland.  Defendants' evidence supporting a legitimate, nondiscriminatory reason shifts the burden to the plaintiff to come forward with evidence demonstrating that PAR's asserted reason for terminating him is a pretext for impermissible age discrimination.

Plaintiff acknowledges in his opposition that "work in the Cleveland office faltered to a degree."  (Pltf. Opp. at 2.)  However, plaintiff contests defendants' position that business conditions were the reason for his termination.  Plaintiff contends Querry testified that PAR "did not suffer [a] significant decrease during the year in which Plaintiff was terminated," but, rather, is a "700 million dollar company" and was not "under any financial pressure to rid itself of Plaintiff."  (Pltf. Opp. at 3, citing Querry Dep. at 59-62.)  He also submits a

10

"Divisional Performance Comparison for the Month of December 2009."  (Pltf. Ex. D.)  This document, on its face, appears to rank Division 24 Ohio 14th out of 17th in "revenues" and 4th out of 17th in gross margin for 2009.

Further, plaintiff disputes that PAR actually "closed" its Cleveland office.  Plaintiff contends "[a] genuine question exists on whether there was a reduction in force *at the time* [plaintiff] was terminated" because only he and his wife were actually terminated on January 21, 2010 (Pltf. Opp. at 4), while the other employee in the Cleveland office, Michelle Owens, remained in the office for several months and was not terminated until October 6, 2010.  (*See* Def. Ex. 8-A.)  According to plaintiff, this demonstrates that the Cleveland office was "still open" for business for "several months" after his termination.  (Pltf. Opp. at 4.)  In addition, plaintiff points to Querry's deposition testimony that another, younger PAR employee (Larry Clute), who works out of his house in Indiana, is currently managing the contractor-of-choice agreement.  (Pltf. Opp. at 2-3.)  Plaintiff contends this demonstrates that "the major contract of Division 24 [is] still in the hands of PAR, just being run from a different location."  (Pltf. Opp. at 4.)[6]

Plaintiff's evidence in insufficient to show pretext.  As discussed above, defendants submit evidence which amply demonstrates that PAR – and indeed, plaintiff himself – considered the Cleveland office to be suffering from a lack of business as early as 2009.  Although plaintiff takes the position now, for purposes of opposing defendants' motion for summary judgment, that the office was not faltering financially and that PAR did not need to

---

[6]     Plaintiff contends that he could have continued to manage the CPP and contractor-of-choice contracts from a home office without being terminated but he was not given that opportunity "but-for" age discrimination.

11

terminate him, plaintiff's evidence does not demonstrate a material issue of fact.  Querry's

deposition testimony does not demonstrate that PAR's asserted reason for terminating

plaintiff – its closure of the Cleveland office due to insufficient business –  is false or

insufficient to warrant plaintiff's discharge.  Querry clearly testified that some areas of PAR's

business in some regions – including in plaintiff's region (Ohio) and in low voltage work like

that involved in Division 24's CCP contract – suffered a downturn beginning in late 2007.

(Querry Dep. at 55-62.)  Querry did not, as plaintiff suggests, testify that PAR had no

financial reason to terminate plaintiff.

Likewise, the "Divisional Performance Comparison" chart plaintiff submits does not

demonstrate pretext.  The chart, on its face, appears to reflect relational rankings for Ohio's

Division 24 office for the year 2009 as against other offices.  It attributes a "4 of 17" ranking

to Ohio's Division 24 in gross margin, but a "14 of 17" ranking in revenues for 2009.

However, these rankings on their face do not call into question or contradict defendants'

evidence, demonstrating that PAR's Ohio office experienced a significant downturn in its

revenue and gross margin from 2005 to 2010, prompting PAR's decision to close the

Cleveland office.  Simply, the document does not create any issue or dispute as to whether

PAR's Cleveland office  experienced a drastic business decline.

Further, defendants' evidence shows that PAR closed its Cleveland office and

"terminated" all employees there.  (*See* Def. Ex. 8-A.)  Plaintiff's contention that a genuine

issue of fact exists as to whether there was a reduction in force at the time of his termination

because the secretary, Michelle Owens, was not terminated on the same day he was

terminated lacks merit.  There can be no legitimate argument that PAR did not, in fact, close

12

its Cleveland office and terminate all Cleveland employees.  The fact that one employee, Michelle Owens, was not terminated until October 2010 does not change the fact that the office was closed and all employees were terminated in 2010.[7]  There is no evidence that PAR kept or has any employees in Cleveland.

Finally, plaintiff puts great emphasis on Querry's testimony that a younger employee, Larry Clute, is currently managing the choice-of-contractor agreement out of his house in Indiana.  This fact alone is insufficient to establish pretext.[8]  The mere fact that work formerly handled by the closed Cleveland office was redistributed among other PAR employees, including a younger employee, does not demonstrate that PAR did not actually close its Cleveland office. Plaintiff complains that he was not given the option of working from home and asserts that "but for Querry's anti-age animus, a recommendation might have been made to retain [plaintiff]."  (Pltf. Opp. at 10.)  Plaintiff has not offered evidence from which a reasonable jury could reach this conclusion.  Plaintiff has failed to come forward with evidence demonstrating that PAR's legitimate, nondiscriminatory reason for terminating plaintiff was not the real reason plaintiff was terminated.[9]  Thus, even *assuming* that Querry

---

[7]

Shiflett stated that Owens remained in the office merely to perform clerical tasks and was later terminated.  (Shiflett Aff., ¶12.)  No evidence contradicts this.

[8]

Defendants' evidence shows that PAR terminated a total of nine employees in Cleveland, Wisconsin, and Missouri in 2010, with birth dates ranging from 1945 (plaintiff) to 1978.  (*See* Def. Ex. 8-A.)  In addition, defendants' submit evidence that PAR's overall workforce contains a significant number of individuals within plaintiff's protected class.  (*See* Def. Ex. 9-B.)

[9]

Moreover, there is no evidence that Clute performed only the work that plaintiff previously performed.

13

had age animus toward plaintiff, plaintiff has failed to point to evidence from which a reasonable jury could conclude that "but for" Querry's age discrimination, plaintiff would not have been terminated as a result of PAR's 2010 closure of its Cleveland office due to insufficient business.[10]

### V. Conclusion

For all of the reasons stated above, defendants' motion for summary judgment on plaintiff's state law age discrimination claim is granted.  In light of this ruling, only the counterclaims and third-party claims remain in the case.

---

[10]

Plaintiff argues that, under the so-called "cat's paw" theory of liability recognized by the Supreme Court in *Staub v. Proctor Hospital*, 131 S. Ct. 1186, 179 L.Ed.2d 144 (Mar. 1, 2011), he need only show that Querry's anti-age animus "was a determining factor that made a difference" in his termination.  (Pltf. Opp. at 12.)  *Staub* held, in a discrimination suit arising under the Uniformed Services Employment and Reemployment Act (USERRA), that an employer is liable if:  (1) a supervisor performs an act motivated by a discriminatory animus that is intended to cause an adverse action, and (2) the act is a proximate cause of the ultimate action.  "Proximate cause requires only some direct relation between the injury asserted and the injurious conduct alleged."  *Staub*, 131 S. Ct. 1192.  A post-*Staub* decision, applying the cat's paw theory in an age discrimination case, held that age discrimination claims require a closer connection between a subordinate's discriminatory animus and an adverse employment decision by a superior than claims under USERRA.  The court held that, in age discrimination cases, a "plaintiff seeking to hold an employer liable through discriminatory conduct of its subordinate must show that the subordinate's animus was a 'but for' cause of the adverse employment action, *i.e.*, it was a factor that made a difference."  *See Simmons v. Sykes Enterprises, Inc*., Case No. 09-1558, 2011 WL 2151105, at *4 (10th Cir. June 2, 1011).  This standard comports with what is required under Ohio law.  *See, e.g*, *Frick v. Potash Corp.*, No. 1-09-59, 2010 WL 3529253, at * 5 (Ohio App. Sept. 13, 2010) (*citing Gross v. FBL Fin. Serv. Inc*., 129 S. Ct. 2343, 2350 (2009) ("[A] plaintiff must prove that age was the 'but for' cause of the employer's adverse decision.").  Accordingly, plaintiff must show that Querry's animus was the "but for" cause of his termination.  As discussed above, plaintiff has not made such a showing.

IT IS SO ORDERED.


                                 /s/ Patricia A. Gaughan

                                 PATRICIA A. GAUGHAN

                                 United States District Judge

Dated: 9/1/11

15